UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ROBERT L. FRIESS,

                    Petitioner,

                                    Case Number 04-10048

v.                                 Honorable David M. Lawson

CAROL HOWES,

                    Respondent.

_____/

**OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS**

The petitioner, Robert L. Friess, a state prisoner currently confined at the Lakeland Correctional Facility in Coldwater, Michigan, has filed a *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 asserting that he is in custody in violation of his constitutional rights. The petitioner was convicted of two counts of manslaughter with a motor vehicle, Mich. Comp. Law § 750.321, following a jury trial in the Recorder's Court for the City of Detroit in 1997 and was sentenced as a fourth habitual offender, Mich. Comp. Law § 769.12, to twenty to forty years imprisonment. In his pleadings, the petitioner alleges he was denied the effective assistance of counsel both at trial and on appeal. The respondent has filed a response to the petition asserting that the claims are either procedurally defaulted or lack merit. The Court finds that one of the petitioner's ineffective assistance of counsel claims was not raised until his post-conviction motion, and he has shown neither cause for failing to raise this claim in his direct appeal nor prejudice. The other two claims of ineffective assistance of counsel lack merit. Therefore, the Court will deny the petition for writ of habeas corpus.

I.

-1-

The petitioner's convictions arise from the deaths of Norman Cope and Debra Pegg in an automobile accident that occurred in Detroit, Michigan shortly after 10:00 p.m. on August 16, 1996. The Michigan Court of Appeals set forth the basic facts as follows:

> Defendant and a female companion [Debra Pegg] were occupants of a Mercury Marquis registered in defendant's name. Two police officers witnessed what appeared to be a drug transaction transpiring between the occupants of the Mercury and a pedestrian. When the police approached the Mercury, the driver attempted to flee. A highspeed chase ensured, that culminated in the Mercury entering an intersection against a red light. As a result, the Mercury struck another vehicle. The crash killed the occupant of that vehicle [Norman Cope], as well as defendant's female companion. Defendant was also injured in the accident.

*People v. Friess*, 1999 WL 33455118, *1 (Mich. App. Jan. 8, 1999).

The petitioner made three statements to police while he was hospitalized after the accident. In the first statement taken at approximately 3:00 a.m. on August 17, 1996, the petitioner stated that he was the driver, but that Debra Pegg pushed her foot on the gas pedal, causing the accident. In the second statement taken at 4:40 p.m. the same day, the petitioner admitted that he was driving his car at the time of the accident. In the third statement taken on August 21, 1996, the petitioner claimed that Debra Pegg was driving his car when the accident occurred and that he had tried to stop her.

Defense counsel moved to suppress the statements prior to trial, claiming that the petitioner was not sufficiently coherent to waive his *Miranda* rights and provide knowing and voluntary statements due to his injuries and pain medication. The trial court conducted an evidentiary hearing to determine the admissibility of the statements. At that hearing, Detroit Police Lieutenant Arliss Clarkson testified that she obtained the first statement from the petitioner while he was in the intensive care unit at Grace Hospital during the early morning hours on August 17, 1996. Prior to obtaining the statement, she read the petitioner his *Miranda* rights and the petitioner said that he

understood those rights.  The petitioner could not sign the rights form or his statement because of tubes and intravenous apparatuses associated with his medical treatment.  Clarkson testified that although the petitioner was in pain, he was cooperative and responsive and his statements made sense.  Clarkson stated that she obtained permission from hospital personnel before speaking with the petitioner.  Clarkson read the petitioner's first statement into the record.

Detroit Police Officer Gregory Hughes testified that he obtained the petitioner's second statement on August 17, 1996 and his third statement on August 21, 1996.  On August 17, 1996, Hughes advised the petitioner of his *Miranda* rights verbally and held up the form so that the petitioner could also read them himself.  The petitioner acknowledged that he understood his rights, but did not sign the form because his hand was immobile.  Hughes noted that the petitioner was coherent and understanding at the time he made his statement.  Hughes ceased the interview when the petitioner indicated that he was tired.  A nurse named Cynthia Barcome witnessed the statement and signed it.  On August, 21, 1996, Hughes re-advised the petitioner of his *Miranda* rights and obtained the final statement.  Hughes testified that he obtained permission from hospital personnel before speaking with the petitioner on both occasions.  Hughes read both statements into the record.

Cynthia Barcome testified that she was one of the nurses who treated the petitioner during his stay at Grace Hospital following the accident.  She acknowledged signing the statement, which indicated that the petitioner was coherent when he spoke to the police.  She heard the officer read the petitioner his rights and heard the petitioner say that he understood his rights and would answer questions.  Barcome testified that she would not have let the interview proceed if she did not believe that the petitioner was coherent.  She could not recall the petitioner's specific injuries or medications.  She stated that most neurological patients are not given narcotics and that intensive

-3-

care patients are not given medications like sodium pentathol, which would reduce the will of a person to resist questioning.

At the close of the hearing, the trial court denied the motion to suppress, finding that the petitioner knowingly and voluntarily waived his *Miranda* rights and made statements to the police. The statements were admitted at trial.

The main issue at trial was whether the petitioner was the driver of the vehicle that caused the fatal crash. Dr. Carl Schmidt, who performed the autopsies on the victims, testified that they both died of multiple wounds from the accident. He was unable to discern whether Debra Pegg was the driver or passenger of the Mercury. She sustained injuries to her right ear, right scalp, and right forearm, which were consistent with being an unrestrained passenger in the car. She also had injuries to her left hand, chin, and sternum, which could indicate that she was the driver. After viewing photographs of the petitioner's injuries, Dr. Schmidt testified that those injuries were consistent with those of a person driving a car.

Detroit Police Officer Joseph Rocha testified that he observed the drug transaction and subsequent accident. He stated that the driver of the Mercury was a male with long hair. After the high speed chase and crash, he observed a female leaning out the passenger window of the overturned Mercury and observed the petitioner, a white male with long hair, crawling around inside the car. At the preliminary examination, he also identified the driver of the Mercury as a male.

Wayne County Sheriff Deputy William Mittlestat witnessed the high speed chase and obtained radar readings of 95 and then 75 miles per hour from the Mercury. He saw that the car had two occupants with long hair and thought that the driver was a female, although he did not know who was driving the car.

-4-

Other police officers and medical personnel who responded to the scene of the crash observed a female hanging out of the passenger side of the Mercury and a male inside the car.

Detroit Police evidence technician James Robbins took photographs of the petitioner at the hospital. He testified that the petitioner had chest injuries that were consistent with hitting the steering wheel and the petitioner had a bad bruise on the left shoulder above the armpit, which was consistent with a driver's side seat belt. Robbins was of the opinion that the petitioner was the driver of the Mercury.

Detroit Police Forensic Chemist Steven Gawlick compared hair samples from the Mercury with Debra Pegg's hair samples and testified that they could have a common origin. Jacqulyn Hecmanczuk, a medical laboratory technician, testified that the petitioner tested positive for opiates on the night of the accident.

The witnesses from the suppression hearing testified at trial in a manner consistent with their prior testimony. As noted earlier, the petitioner's three police statements were admitted into evidence.

EMS Technician Francine Cleer testified that she responded to the scene of the accident and observed a woman hanging outside the passenger window of the Mercury. On the way to the hospital, the petitioner asked about the woman and said several times that the accident was "his fault." Trial Tr., April 9, 1997, at 29.

Defense witness Paul Begeman, an expert in impact biomechanics, examined the car, the photographs, the autopsy reports, and the petitioner's hospital records. He testified that he was unable to determine who was driving the car, but admitted that it could have been the petitioner.

At the close of trial, the jury found the petitioner guilty of two counts of manslaughter with a motor vehicle in violation of Michigan Compiled Law §750.321; that crime normally carries a maximum sentence of fifteen years in prison.  The trial court subsequently sentenced the petitioner as a fourth habitual offender to twenty to forty years imprisonment pursuant to Michigan Compiled Law § 769.12, which allows the sentencing court to "sentence the person to imprisonment for life or for a lesser term."  Mich. Comp. Laws § 769.12(a).

Following his conviction and sentencing, the petitioner, through counsel, filed a direct appeal in the Michigan Court of Appeals, raising claims that challenged the knowing and voluntary nature of his waiver of his *Miranda* rights and his police statements, alleged judicial bias, questioned the propriety of the jury instructions, disputed the qualification of an expert witness, alleged cumulative error, and contested the length of his sentence.  The Michigan Court of Appeals affirmed the petitioner's convictions.  *People v. Friess*, 1999 WL 33455118 (Mich. App. Jan. 8, 1999).

The petitioner filed a delayed application for leave to appeal in the Michigan Supreme Court raising the same claims plus his contention that his habitual offender notice was defective and trial counsel was ineffective for failing to prepare a defense and obtain and present his medical records at the pre-trial hearing.  The Michigan Supreme Court denied leave to appeal.  *People v. Friess*, 461 Mich. 898, 603 N.W.2d 640 (1999) (table).

The petitioner subsequently filed a motion for relief from judgment asserting that trial counsel was ineffective for failing to obtain his medical records to challenge the admissibility of his police statements and for failing to challenge the habitual offender notice and sentence, and that appellate counsel was ineffective for failing to raise the same issues on appeal and for failing to challenge trial counsel's effectiveness.  The trial court denied the motion, finding that the issues

were barred by Michigan Court Rule 6.508(D), which provides, among other things, that "[t]he court

may not grant relief to the defendant if the motion . . . alleges grounds for relief, other than

jurisdictional defects, which could have been raised on appeal from the conviction and sentence"

absent a showing of cause and prejudice.  Mich. Ct. R. 6.508(D)(3).  *People v. Friess*, No. 96-

007435-01 (Wayne Co. Cir. Ct. June 4, 2002) (unpublished).  The petitioner filed a delayed

application for leave to appeal this decision in the Michigan Court of Appeals, which was denied

for failure to establish entitlement to relief under Michigan Court Rule 6.508(D).  *People v. Friess*,

No. 247246 (Mich. Ct. App. July 3, 2003).  The petitioner also filed an application for leave to

appeal in the Michigan Supreme Court, which was similarly denied.  *People v. Friess*, 469 Mich.

998, 674 N.W.2d 378 (2004).

The petitioner thereafter filed his federal petition for writ of habeas corpus asserting the

following claims:

> I.     Petitioner was denied effective assistance of counsel at trial based on
> counsel's failure to investigate the facts and circumstances surrounding
> petitioner's alleged waiver of *Miranda* and confessions, which shows
> petitioner's alleged waiver of *Miranda* and confessions were induced by
> narcotics administered for pain, rather than given by free will, knowingly,
> intelligently, and voluntarily.

> II.    Petitioner was denied effective assistance of counsel on appeal based on
> counsel's failure to investigate, obtain, and present petitioner's medical
> records in support of the Fifth Amendment violation raised on appeal.  Also,
> counsel failed to raise the due process violation where petitioner's habitual
> offender sentence is based on an invalid conviction in violation of statute.

> III.   Petitioner was denied effective assistance of counsel based on appellate
> counsel's failure to raise a jurisdictional defect precluding the state from
> sentencing petitioner as a fourth habitual offender.

The respondent has filed an answer to the petition asserting that the claims should be denied based

upon procedural default or for lack of merit.

II.

The provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub.

L. No. 104-132, 110 Stat. 1214 (Apr. 24, 1996), which govern this case, "circumscribe[d]" the

standard of review federal courts must apply when considering applications for a writ of habeas

corpus raising constitutional claims, including claims of ineffective assistance of counsel.  *See*

*Wiggins v. Smith*, 539 U.S. 510, 520 (2003).  As amended, 28 U.S.C. § 2254(d) imposes the

following standard of review for habeas cases:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim -
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  Therefore, federal courts are bound by a state court's adjudication of a

petitioner's claims unless the state court's decision was contrary to or involved an unreasonable

application of clearly established federal law.  *Franklin v. Francis*, 144 F.3d 429, 433 (6th Cir.

1998). Mere error by the state court will not justify issuance of the writ; rather, the state court's

application of federal law "must have been objectively unreasonable."  *Wiggins*, 539 U.S. at 520-21

(quoting *Williams v. Taylor*, 529 U.S. 362, 409 (2000) ( internal quotes omitted)).  Additionally, this

Court must presume the correctness of state court factual determinations.  28 U.S.C. § 2254(e)(1)

("In a proceeding instituted by an application for a writ of habeas corpus by a person in custody

pursuant to the judgment of a State court, a determination of a factual issue made by a State court

shall be presumed to be correct."); *see also West v. Seabold*, 73 F.3d 81, 84 (6th Cir. 1996) (stating

that "[t]he court gives complete deference to state court findings of historical fact unless they are

clearly erroneous").

The Supreme Court has explained the proper application of the "contrary to" clause as

follows:

> A state-court decision will certainly be contrary to [the Supreme Court's] clearly
> established precedent if the state court applies a rule that contradicts the governing
> law set forth in our cases. . . .

> A state-court decision will also be contrary to this Court's clearly established
> precedent if the state court confronts a set of facts that are materially
> indistinguishable from a decision of this Court and nevertheless arrives at a result
> different from [the Court's] precedent.

*Williams v. Taylor*, 529 U.S. 362, 405-06 (2000).

The Supreme Court has held that a federal court should analyze a claim for habeas corpus

relief under the "unreasonable application" clause of § 2254(d)(1) "when a state-court decision

unreasonably applies the law of this Court to the facts of a prisoner's case." *Id.* at 409. The Court

defined "unreasonable application" as follows:

> [A] federal habeas court making the "unreasonable application" inquiry should ask
> whether the state court's application of clearly established federal law was
> objectively unreasonable. . . .

> [A]n *unreasonable* application of federal law is different from an *incorrect*
> application of federal law. . . . Under § 2254(d)(1)'s "unreasonable application"
> clause, then, a federal habeas court may not issue the writ simply because that court
> concludes in its independent judgment that the relevant state-court decision applied
> clearly established federal law erroneously or incorrectly. Rather, that application
> must also be unreasonable.

*Id.* at 409, 410-11. *See also King v. Bobby*, 433 F.3d 483, 489 (6th Cir. 2006); *Harbison v. Bell*, 408 F.3d 823, 828-29 (6th Cir. 2005); *McAdoo v. Elo*, 365 F.3d 487, 493 (6th Cir. 2004); *Rockwell v. Yukins*, 341 F.3d 507, 512 (6th Cir. 2003) (en banc).

A.

The petitioner first contends that he is entitled to habeas relief because trial counsel was ineffective by failing to investigate the facts and circumstances surrounding his waiver of *Miranda* rights and his statements to police. He says that counsel failed to obtain and present his medical records, which he claims would show that he was in pain and under the influence of medication that would have rendered his waiver and statements involuntary. The respondent contends that this claim is barred by procedural default because the petitioner did not raise it on direct appeal to the state court of appeals, but rather waited until his discretionary appeal to the state supreme court before he presented the issues.

A procedural default in the habeas context is "a critical failure to comply with state procedural law." *Trest v. Cain*, 522 U.S. 87, 89 (1997). The Sixth Circuit has stated that

> As a general rule, on *habeas* review, federal courts may not consider procedurally defaulted claims. *Seymour v. Walker*, 224 F.3d 542, 549-50 (6th Cir. 2000). A claim is procedurally defaulted if: (1) the petitioner failed to comply with an applicable state procedural rule; (2) the state courts actually enforced the procedural rule; and (3) the state courts' finding of noncompliance is an adequate and independent state ground for denying relief on the federal constitutional claim. *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir.1986).

*Cone v. Bell*, 359 F.3d 785, 789 (6th Cir. 2004), *rev'd on other grounds*, 543 U.S. 447 (2005) (per curiam).

-10-

Indeed, habeas relief may be precluded on claims for relief that a petitioner has not presented to the state courts in accordance with the state's procedural rules. *See Wainwright v. Sykes*, 433 U.S. 72 (1977); *Couch v. Jabe*, 951 F.2d 94 (6th Cir. 1991). The doctrine of procedural default provides:

> In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

*Coleman v. Thompson*, 501 U.S. 722, 750 (1991). Application of the cause-and-prejudice bar may be avoided if a petitioner "presents an extraordinary case whereby a constitutional violation resulted in the conviction of one who is actually innocent." *Rust v. Zent*, 17 F.3d 155, 162 (6th Cir. 1994); *see Murray v. Carrier*, 477 U.S. 478, 496 (1986).

For the doctrine of procedural default to apply, a firmly established state procedural rule applicable to the petitioner's claim must exist, and the petitioner must have failed to comply with that state procedural rule. *Williams v. Coyle*, 260 F.3d 684, 693 (6th Cir. 2001); *see also Warner v. United States*, 975 F.2d 1207, 1213-14 (6th Cir. 1992). Additionally, the last state court from which the petitioner sought review must have invoked the state procedural rule as a basis for its decision to reject review of the petitioner's federal claim. *Coleman*, 501 U.S. at 729-30. Finally, the procedural default must rest on an "adequate and independent" state ground. *Howard v. Bouchard*, 405 F.3d 459, 477 (6th Cir. 2005). Whether the independent state ground is adequate to support the judgment is itself a federal question. *Lee v. Kemna*, 534 U.S. 362, 375 (2002).

If the last state court from which the petitioner sought review affirmed the conviction both on the merits and, alternatively, on a procedural ground, the procedural default bar is invoked and the petitioner must establish cause and prejudice in order for the federal court to review the petition.

-11-

*Rust*, 17 F.3d at 161. If the last state court judgment contains no reasoning, but simply affirms the conviction in a standard order, the federal habeas court must look to the last reasoned state court judgment rejecting the federal claim and apply a presumption that later unexplained orders upholding the judgment or rejecting the same claim rested upon the same ground. *Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991).

In the present case, the petitioner first raised this issue in the state courts in his application for leave to appeal his conviction, which he filed in the state supreme court. That application was denied for lack of merit. He raised it again in his motion for relief from judgment. The trial court denied relief pursuant to Michigan Court Rule 6.508(D)(3) because the petitioner failed to raise this claim on direct appeal and failed to establish cause and prejudice or a miscarriage of justice. The Michigan appellate courts also cited the failure to comply with Michigan Court Rule 6.508(D) in denying the petitioner's applications for leave to appeal the denial of his motion for relief from judgment.

The United States Court of Appeals for the Sixth Circuit has held that Michigan Court Rule 6.508(D), enacted in October 1989, is a firmly established and regularly followed state ground precluding subsequent federal habeas review absent a showing of cause and prejudice where the rule was in effect at the time of a petitioner's direct appeal. *See Luberda v. Trippett*, 211 F.3d 1004, 1007-08 (6th Cir. 2000) (citing *Rogers v. Howes*, 144 F.3d 990 (6th Cir. 1998), and *Coleman*, 501 U.S. at 750). Habeas review of this issue, therefore, is precluded in the absence of a showing of cause and prejudice or a miscarriage of justice.

The petitioner cites ineffective assistance of appellate counsel as cause for the failure to abide by the state procedural rules. This Court previously has held that "[i]neffective assistance of

-12-

appellate counsel can constitute 'cause' for a procedural default." *Tucker v. Renico*, 317 F. Supp. 2d 766, 772 (E.D. Mich. 2004) (citing *Murray v. Carrier*, 477 U.S. 478, 488 (1986)).  "If [the petitioner] can show that he received ineffective assistance of . . . counsel that rose to the level of a violation of his Sixth Amendment rights, it would excuse his procedural default." *Martin v. Mitchell*, 280 F.3d 594, 605 (6th Cir. 2002).  "Not just any deficiency in counsel's performance will do, however; the assistance must have been so ineffective as to violate the Federal Constitution." *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000).

The two-prong test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984), governs claims of ineffective assistance of counsel.  *Towns v. Smith*, 395 F.3d 251, 258 (6th Cir. 2005).  To show a violation of the Sixth Amendment right to effective assistance of counsel, a petitioner must establish that his attorney's performance was deficient and that the deficient performance prejudiced the defense.  *Strickland*, 466 U.S. at 687.  Counsel's performance is deficient if the attorney's representation "fell below an objective standard of reasonableness." *Id*. at 688.  The defendant must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id*. at 687.  However, "[j]udicial scrutiny of counsel's performance must be highly deferential." *Strickland*, 466 U.S. at 689.  The Court has "declined to articulate specific guidelines for appropriate attorney conduct and instead [has] emphasized that the proper measure of attorney performance remains simply reasonableness under prevailing professional norms." *Wiggins*, 539 U.S. at 521 (quoting *Strickland*, 466 U.S. at 688; internal quotes omitted).  Counsel's conduct is entitled to the strong presumption that it falls within the wide range of reasonable professional assistance, and the petitioner must overcome the presumption that the conduct "might be considered sound trial strategy." *Strickland*, 466 U.S. at 688

-13-

(quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)); *see also Higgins v. Renico*, 470 F.3d 624, 632 (6th Cir. 2006) (observing that "[s]uch [strategic] choices can vary greatly from attorney to attorney and from case to case, and reviewing courts must scrutinize these choices with a great deal of deference").

An attorney's deficient performance is prejudicial if "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id*. at 687. The petitioner must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. A court making this determination must consider the totality of the evidence before the factfinder. *Id*. at 695. "[A] verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support." *Strickland*, 466 U.S. at 695-96. Unless the petitioner demonstrates both deficient performance and prejudice, "it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable." *Strickland*, 466 U.S. at 687.

This Court does not find that appellate counsel's performance was deficient under the *Strickland* standard. The Supreme Court has held that a petitioner does not have a constitutional right to have appellate counsel raise every non-frivolous issue on appeal. *Jones v. Barnes*, 463 U.S. 745, 754 (1983). Strategic and tactical choices regarding which issues to pursue on appeal are "properly left to the sound professional judgment of counsel." *United States v. Perry*, 908 F.2d 56, 59 (6th Cir. 1990). Appellate counsel's decision to forego a claim of ineffective assistance of trial counsel on the issue of the *Miranda* waiver and to pursue other issues, including the underlying voluntariness issues, on direct appeal falls within that purview.

-14-

Further, the petitioner cannot establish that he was prejudiced by appellate counsel's conduct as the underlying ineffective assistance of trial counsel claim lacks merit. The petitioner has not demonstrated that trial counsel was ineffective under the *Strickland* standard set forth above. First, the petitioner has not shown that counsel failed to obtain his medical records or otherwise sufficiently investigate the circumstances surrounding the *Miranda* waiver and police statements. The record indicates that counsel was aware of the petitioner's injuries and pain medication on some level at the time of the hearing. Counsel questioned the witnesses at the hearing and made relevant arguments for suppression. Although routine practice would suggest that procuring the medical records was to be expected, the petitioner has not shown that counsel's failure to obtain those records at the suppression hearing was detrimental: he has offered no medical or expert testimony to indicate that his physical injuries or medications would have interfered with his ability to knowingly and voluntarily waive his *Miranda* rights and provide statements to the police; and the intensive care nurse testified that neurological and intensive care patients are not given drugs that affect their cognition. The fact that the petitioner was in pain and given pain medication does not necessarily render his waiver or statements involuntary. *See, e.g., United States v. Cristobal*, 293 F.3d 134, 141-42 (4th Cir. 2002) (holding that medical records indicating that the defendant had been given narcotics without evidence of the effects of those narcotics were insufficient to invalidate waiver of *Miranda* rights). The petitioner has presented no evidence as to the effect of his pain medications. Conclusory allegations, without evidentiary support, do not provide a basis for habeas relief. *See, e.g., Workman v. Bell*, 160 F.3d 276, 287 (6th Cir. 1998) (conclusory allegations of ineffective assistance of counsel do not justify federal habeas relief); *Zettlemoyer v. Fulcomer,* 923 F.2d 284, 301 (3d Cir. 1991) (bald assertions and conclusory allegations do not provide sufficient

-15-

basis to hold an evidentiary hearing in habeas proceedings).  Moreover, the petitioner has presented

no evidence of police coercion or exploitation of the petitioner's condition, despite the fact that

"coercive police activity is a necessary predicate to the finding that a confession is not 'voluntary'

within the meaning of the Due Process Clause of the Fourteenth Amendment."  *Colorado v.*

*Connelly*, 479 U.S. 157, 167 (1986).

Second, the petitioner has not shown that he was prejudiced by trial counsel's conduct.  The

trial court was well aware of the circumstances surrounding the petitioner's waiver and statements,

including the fact that he was seriously injured, in pain, and being medicated, even though the

medical records were not in evidence.  Moreover, the police officers and an attending nurse all

testified that the petitioner was coherent, he understood his *Miranda* rights, and he agreed to waive

those rights and speak to the police.  The petitioner has not shown that the result of the suppression

hearing would have been different if his lawyer would have pursued an alternate course.  *See Reinert*

*v. Larkins*, 379 F.3d 76, 94-95 (3d Cir. 2004) (holding that trial counsel was not ineffective for

failing to offer expert testimony as to the petitioner's mental and physical ability to knowingly and

voluntarily waive his *Miranda* rights).

Moreover, the petitioner cannot establish that he was prejudiced by counsel's conduct with

regard to the result at trial.  There was significant evidence of the petitioner's guilt (as the driver of

the vehicle) aside from his police statements.  Such evidence included the fact that the Mercury

belonged to the petitioner, the police testimony that the driver of the Mercury was a long-haired

male, the police testimony that Debra Pegg was hanging out of the passenger window after the crash,

the EMS testimony that the petitioner stated the accident was his fault, the expert testimony that the

petitioner's injuries were consistent with him being the driver of the Mercury, and the expert

-16-

testimony that some of Debra Pegg's injuries were consistent with her being the passenger in the Mercury.  The petitioner has thus failed to establish cause or prejudice to excuse his procedural default.

Nor does the Court find that a miscarriage of justice occurred that would permit review of this issue.  The miscarriage of justice exception requires a showing that a constitutional violation probably resulted in the conviction of one who is actually innocent.  *Schlup v. Delo*, 513 U.S. 298, 326-27 (1995).  "'[A]ctual innocence' means factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623 (1998).  "To be credible, [a claim of actual innocence] requires petitioner to support his allegations of constitutional error with new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence – that was not presented at trial." *Schlup*, 513 U.S. at 324.  The petitioner has made no such showing.  His ineffective assistance of trial counsel claim is thus barred by procedural default, otherwise lacks merit, and does not warrant habeas relief.

## B.

The petitioner next contends that he is entitled to habeas relief because appellate counsel was ineffective for the same reason as trial counsel and for failing to challenge trial counsel's effectiveness on direct appeal.  It is well-established that the right to the effective assistance of counsel includes the right to the effective assistance of appellate counsel.  *See Mapes v. Coyle*, 171 F.3d 408, 427-28 (6th Cir. 1999).  Because the Court's has concluded that the foregoing issues are without merit, the petitioner cannot establish that he was prejudiced by appellate counsel's conduct in not raising these issues as required by *Strickland*.  Habeas relief is therefore not warranted on this basis.

-17-

C.

Lastly, the petitioner contends that he is entitled to habeas relief because appellate counsel was ineffective for failing to challenge the accuracy of the habitual offender notice and his sentence as a fourth habitual offender.  The petitioner correctly notes that his trial counsel did not investigate the fact that one of the convictions listed in the enhancement notice had been reversed, and appellate counsel failed to raise a due process challenge or an ineffective assistance issue on this same basis.

The record on this issue suggests that there is merit to the claim that both counsel's performance was substandard when they ignored this issue.  The petitioner asserted that the second offense listed on the habitual offender notice, "a 1990 Retail Fraud," was actually dismissed by the Michigan Court of Appeals based on violation of the right to a speedy trial.  *See* Brf. in Supp. at 33. At the final pretrial conference, defense counsel informed the trial court of the potential problem with the retail fraud offense:

> Mr. Wilson [defense counsel]: Mr. Friess has advised me that the case of retail fraud dated November the 13th of 1989 [sic – should read "1990"], that case was reversed by the Court of Appeals.
>
> The Court: You want to check that out?
>
> Mr. Heimbuch [prosecutor]: I'll check it out as well Your Honor.

Tr., Nov. 8, 1996, at 9.

Nevertheless, it appears that trial counsel never followed up on this issue and it was never fully resolved.  At sentencing, the court returned to the issue of the retail fraud offense and expressed its thought that although it could find no record of the conviction being reversed on appeal, it may very well have been, because the offense was not listed in the presentence report.  The transcript reads as follows:

-18-

The Court: I understand as well that with respect to the habitual, Mr. Wilson, that your client has raised with you a question as to whether the second felony conviction listed and the notice of intent to enhance sentence. More specifically, that on or about November 13th of 1990, he was convicted of retail fraud in the first degree in the Recorder's Court for the City of Detroit, whether or not that case has not been reversed on appeal. Is that correct?

Mr. Wilson: That is correct, Your Honor.

The Court: Well, can you run on the computer a case number for me?

The Deputy: Go ahead.

The Court: 90-12064.

(Brief pause.)

The Court: Time served. Does it ever show any appeal?

The Deputy: Leave to appeal 10-10-91.

The Court: Yes, go ahead.

The Deputy: And –

The Court: Does it say anything more?

The Deputy: No.

The Court: Well, he may very well be right, because I tell you that the presentence report does not list that as a prior conviction. Do you have any knowledge of that, Mr. Heimbuch?

Mr. Heimbuch: No, Your Honor. I don't at this time.

Tr., April 25, 1997, at 4-5.

Despite its uncertainty as to the retail fraud conviction, the trial court determined that sentencing the petitioner to twenty to forty years imprisonment was still appropriate because: (1) the petitioner undisputedly had been convicted of at least nine prior felonies, *id.* at 18; and (2) even if an appellate court determined that the notice was defective and the court only had the authority to

-19-

sentence the petitioner as a third habitual offender, "then the sentence of the Court would be the same," *id.* at 22.

On appeal, the Michigan Court of Appeals affirmed the sentence, finding that the trial court's sentence was not an abuse of discretion since the "notice of intent to enhance sentence listed three prior felony convictions" and "the defendant has actually been convicted of ten prior felonies." *People v. Friess*, 1999 WL 33455118 at *14 (Mich. Ct. App. Jan. 8, 1999). However, the appellate court did not address the petitioner's contention that one of the listed felonies was reversed; it considered only appellate counsel's argument that the trial judge issued the sentence based on his personal belief that the petitioner was guilty of second-degree murder. *See id.* at *13-14.

If the trial judge proceeded on the assumption that one of the listed felonies was invalid, he could not have imposed a sentence with a forty year maximum. Michigan Compiled Law section 769.13(1) states that the prosecution must provide notice to a defendant within twenty-one days after arraignment of its intent to pursue enhancement as a habitual offender. The notice must list the prior convictions that will serve as the basis for the enhancement. Mich. Comp. Laws § 769.13(2). After expiration of the twenty-one days, the State may not amend the notice to allege additional prior convictions, although it may amend the notice in a way that does not materially change the consequences faced by the defendant. *See People v. Hornsby*, 251 Mich. App. 462, 469-473 (2002); *see also People v. Ellis*, 224 Mich. App. 752, 755-57 (1997). Of course, a prosecutor could amend a notice to enhance beyond the statutory time period to swap an invalid felony conviction for a valid felony conviction, as long as the amendment does not otherwise increase the potential sentence consequences. *Hornsby*, at 473. But there is no evidence that the prosecutor in this case ever availed himself of that option.

-20-

If the trial court then was limited to treating the petitioner as a third felony offender, at most he could have imposed a maximum sentence of thirty years, since Michigan Compiled Law section 769.11(1)(a) permits a court to double the maximum sentence on the predicate offense for a third offender, and the petitioner was convicted of two counts of manslaughter, which carries a maximum sentence of fifteen years. *See* Mich. Comp. Laws § 750.321. Prevailing professional norms would have required trial counsel to investigate and pursue this claim, and appellate counsel should have raised the issue on direct appeal.

However, the petitioner has not furnished sufficient proof of prejudice in this Court because he has failed to show that the retail fraud conviction in fact was vacated or reversed. The only thing he has submitted is documentary evidence in the form of an order from the Michigan Court of Appeals. *See* Petition, Ex. E, Order of Dismissal dated Sept. 27, 1991. Contrary to the petitioner's assertion, that order does not invalidate the conviction at all. Rather, it reads: "The Court orders that the motion to dismiss, filed by defendant-appellant, is GRANTED and the appeal is DISMISSED." *Ibid.* Certainly, the petitioner's voluntary dismissal of his own appeal does not establish the invalidity of the conviction, even though the PSI fails to list it. Rather, the order contradicts the argument that the conviction was reversed or vacated by the court of appeals. Therefore, the petitioner cannot establish the essential premise underlying his claim in this court: that one of his convictions is invalid and his state lawyers were ineffective in pursuing this sentencing issue.

Despite the substandard performance by trial and appellate counsel, and the trial court's error in assuming that the sentence for a third felony offender would be the same as for a fourth felony offender, the petitioner cannot establish that he was prejudiced by counsel's conduct as required by *Strickland*. Therefore, he cannot prevail on the merits of this claim.

-21-

III.

For the foregoing reasons, the Court finds the petitioner has not shown that he is in custody in violation of the Constitution or laws of the United States.

Accordingly, it is **ORDERED** that the petition for a writ of habeas corpus [dkt # 1] is **DENIED**.

s/David M. Lawson
DAVID M. LAWSON
United States District Judge

Dated: February 12, 2007

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on February 12, 2007.

s/Felicia M. Moses
FELICIA M. MOSES